**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WHITE PINE INVESTMENTS, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| CVR REFINING, LP, CVR ENERGY, INC., CVR REFINING GP, LLC, CVR REFINING HOLDINGS, LLC, ICAHN ENTERPRISES, L.P., and DAVID L. LAMP | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. | |

**INTRODUCTION**

Plaintiff White Pine Investments ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based on personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based upon the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by CVR Refining, LP ("CVRR" or the "Partnership"), as well as conference call transcripts and media and analyst reports about the Partnership. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**SUMMARY OF THE ACTION**

1.      This is a securities class action brought on behalf of all former owners of CVRR common units who sold their units, and were damaged thereby, during the period from July 30, 2018 through January 28, 2019, both dates inclusive (the "Class Period"), against CVRR, CVR Energy, Inc. ("CVI"), CVR Refining GP, LLC (the "General Partner"), CVR Refining Holdings, LLC ("CVR Holdings"), Icahn Enterprises, L.P. ("IEP"), and David L. Lamp ("Lamp") (together, "Defendants").

2.      CVRR, an independent downstream energy limited partnership, was formed by CVI. Since formation, CVRR's business and operations have been run by the General Partner pursuant to CVRR's partnership agreement (the "Partnership Agreement"). As of December 31, 2017, public security holders held approximately 34 percent of CVRR's outstanding units, and CVR Holdings held approximately 66 percent of CVRR's outstanding units.

3.      According to the Partnership Agreement, if the General Partner and/or affiliates own more than 80 percent of CVRR's units, the General Partner could exercise and/or assign to its affiliates the right to acquire CVRR's remaining outstanding units (the "Call Right"). As set

forth in the Partnership Agreement, the predetermined price per unit under the Call Right was the greater of: (i) the average closing price of the units during the 20 trading days predating three days before the notice of intent to effect the buyout; or (ii) the highest per-unit price paid by the General Partner or any of its affiliates for CVRR units during the 90-day period preceding the date the notice of intent to effect the buyout.

4.      On May 29, 2018, CVI announced an exchange offer in which it would exchange CVI stock for most of CVRR's outstanding common units (the "Exchange Offer").  Under the terms of the Exchange Offer, CVI and affiliates, including the General Partner, would collectively own at minimum more than 80 percent, and at maximum 95 percent, of CVRR's units upon completion.  In connection with the Exchange Offer, CVI repeatedly stated that it "ha[d] no current plans to exercise the call right at this time or upon the consummation of the exchange."

5.      The Class Period begins on July 30, 2018, when CVRR issued a press release announcing that the Exchange Offer had expired after the close of trading on July 27, 2018. The press release further stated that following the expiration of the Exchange Offer, that the General Partner, CVI, and other affiliates owned 84.5 percent of the outstanding CVRR common units, a sufficient amount to exercise the Call Right.  Shortly thereafter on August 1, 2018, Defendants reiterated that there were "no current plans to exercise the call right."

6.      Throughout the Class Period, Defendants executed a fraudulent scheme to artificially depress the price of publicly traded CVRR units in order to acquire them for a substantial discount, thereby enriching themselves at the expense of public unit holders:

(a)     *First*, following the Exchange Offer, reduced public float and the threat of the Call Right began depressing the price of CVRR units, more than offsetting favorable financial results.

(b)     *Second*, as the price for CVRR units stagnated, and more than 90 days had passed since expiration of the Exchange Offer, Defendants announced that they were "considering" exercising the Call Right, further causing the units to decline.

(c)     *Finally*, once the price of CVRR units had substantially declined, Defendants seized upon the Call Right, enjoying a purchase price based on the (manipulated) 20-day trading average of CVRR units.

7.     After the close of trading on October 24, 2018, CVRR released its third quarter 2018 financial results, which results were up substantially from the year prior.  What should have signaled meteoric gains for CVRR, however, fell flat.  Instead, any gains in the unit price of CVRR all but evaporated in a handful of trading days.  This negative market sentiment, all according to Defendants' plans, reflected the reduced public float of CVRR units following the Exchange Offer, as well as the looming threat of the Call Right—despite assurances that there was "no intention" to exercise it.

8.     After waiting to ensure a sufficient period of time had passed since the expiration of the Exchange Offer,  the General Partner announced on November 29, 2018 it was "considering" exercising the Call Right.  Importantly, the General Partner added that neither it, nor any of its affiliates, had purchased CVRR units in the 90-day period predating the announcement.  Therefore, Defendants signaled to the market that if (when) they exercised the Call Right, the price would be based on the substantially depressed CVRR unit price. Following this disclosure, CVRR units slipped from a price of $14.16 per unit on November 29,

3

2018, reaching Class Period lows of $9.21 per share on December 21, 2018.

9.     On January 17, 2019, CVRR issued a press release announcing the General

Partner had assigned the Call Right to CVI, and that CVI had determined to exercise the Call

Right.  Further, the press release stated that CVI had determined to exercise the Call Right "for

a cash purchase price of $10.50 per Common Unit" (the "Call Price").  The Call Price, which

was purportedly determined by the Partnership Agreement, was based on the 20-day trading

average of CVRR units ending on January 14, 2018.  Following the announcement, the price of

CVRR units remained artificially depressed at approximately $10.49 per unit.  Defendant's

scheme completed on January 29, 2019, when CVI exercised the Call Right at the Call Price.

10.    To add a further layer to Defendants' fraud, an executive officer of the General

Partner, CVI, and CVRR, and therefore an affiliate of the General Partner, had in fact purchased

CVRR units on November 14, 2018, at $16.71 per unit—well-within 90 days of CVI's notice of

intent to exercise the Call Right.  This transaction, which was only disclosed on January 15,

2019, purportedly due to administrative error, was all but ignored by Defendants.  Therefore,

pursuant to the Partnership Agreement, the Call Price should have been at minimum, $16.71.

Of course, this *minimum* price did not factor in that the CVRR unit price had already been

substantially manipulated by Defendants.

11.    Therefore, throughout the Class Period, Defendants purposely depressed the

price of CVRR units, thereby harming unitholders who sold their units prior to the exercise of

the Call Right.

## JURISDICTION AND VENUE

12.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange

Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC, 17

C.F.R. § 240.10b-5.  This Court has jurisdiction over the subject matter of this action pursuant

to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

13.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b).  Throughout the Class Period, IEP had its principle place of business and operated its business in New York.  Further, a significant portion of Defendants' actions, and the subsequent damages, took place within this District.  Finally, at all relevant times CVRR's common units traded on the New York Stock Exchange ("NYSE").  In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14.     Plaintiff, as set forth in the accompanying Certification, which is incorporated by reference herein, sold CVRR common units during the Class Period and was damaged as the result of Defendants' wrongdoing as alleged in this complaint.

15.     Defendant CVRR is a limited partnership organized and existing under the laws of the State of Delaware.  CVRR facilitated and enabled the General Partner and/or its assignees to exercise the Call Right in breach of the Partnership Agreement.

16.     Defendant General Partner was formed to run the Partnership's business and operations as its general partner.

17.     Defendant CVI is a diversified holding company formed in September 2006 which is primarily engaged in the petroleum refining and nitrogen fertilizer manufacturing industries through its holdings in several limited partnerships, including CVRR.  Defendant CVI, through its subsidiaries, fully owned the General Partner during the Class Period.

18.     Defendant CVR Holdings operates as a holding company that, through its subsidiaries, provides energy services and gas stations, as well as offers oil refining and

marketing services.  CVR Holdings, which owns the General Partner, is an indirect, wholly-owned subsidiary of CVI.

19.     Defendant IEP is a master limited partnership, engaged in several primary business segments, including energy.  As of September 30, 2018, IEP and its affiliates owned approximately 71 percent of CVI's outstanding shares. IEP also owned approximately 3 percent of CVRR's units.

20.     Defendant Lamp, was at all relevant times, the Chief Executive Officer ("CEO") of CVI.

21.     Defendants CVI, the General Partner, CVR Holdings, IEP, and Lamp are collectively referred to hereinafter as the "Control Person Defendants."  The Control Person Defendants, because of their control over the Partnership possessed the power and authority to control the contents of CVRR's reports to the SEC, press releases, and presentations to common analysts, money portfolio managers and institutional investors, *i.e.*, the market.  The Control Persons Defendants were provided with copies of the Partnership's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Control Person Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Control Person Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Control Person Defendants.

## SUBSTANTIVE ALLEGATIONS

## BACKGROUND

22.     CVRR is an independent downstream energy limited partnership with refining and related logistics assets that operates in the mid-continent region.  CVRR was formed by CVI, the indirect owner of the General Partner, in September 2012 in order to own and operate petroleum and auxiliary businesses as a limited partnership.  Since formation, CVRR's business and operations have been run by the General Partner pursuant to the Partnership Agreement. On January 23, 2013, CVRR completed its initial public offering of 24,000,000 common units to the public priced at $25.00 per unit, resulting in gross proceeds to CVRR of $600 million.

23.     According to the Partnership Agreement, if the General Partner and/or affiliates[1] own more than 80 percent of CVRR's units, the General Partner could exercise and/or assign to its affiliates the right to acquire CVRR's remaining outstanding units.  As set forth in the Partnership Agreement, the predetermined price per unit under the Call Right, if exercised, would be the greater of: (i) the average closing price of the units during the 20 trading days predating three days before the notice of intent to effect the buyout; or (ii) the highest per-unit price paid by the General Partner or any of its affiliates for CVRR units during the 90-day period preceding the date the notice of intent to effect the buyout.

24.     As of December 31, 2017, public security holders held approximately 34 percent of CVRR's outstanding units, and CVR Holdings held approximately 66 percent of CVRR's outstanding limited partner interests.  In addition, CVR Holdings owned 100 percent of the Partnership's General Partner.  The following chart represents CVRR's organizational structure as of December 31, 2017:

---

[1]     Under the Partnership Agreement, "'*Affiliate*' means, with respect to any Person, any other Person that directly or indirectly through one or more intermediaries Controls, is Controlled by or is under common Control with, the Person in question."



25.     On May 29, 2018, CVI announced the Exchange Offer in which it would exchange CVI stock for most—but not all—of CVRR's outstanding common units.  Pursuant to the Exchange Offer, the completion of which was contingent on a sufficient number of CVRR units properly tendered to secure more than an 80 percent ownership interest in CVRR, CVI and its affiliates would collectively own, at maximum, 95 percent of CVRR's outstanding common units.  Therefore, upon completion of the Exchange Offer, the General Partner's right to

exercise the Call Right would be triggered.  Despite the General Partner's potential to exercise the Call Right, and Defendants' desire to do so, the Schedule 13D/A filing announcing the Exchange Offer stated that the General Partner and its affiliates, including CVI and IEP, "ha[d] no current plans to exercise the call right at this time or upon the consummation of the exchange."

26.     Under the terms of the Exchange Offer, CVRR unitholders, if able, could exchange their units for shares of CVI at a rate of one unit per 0.6335 shares of CVI.  Based on the May 25, 2018 closing prices of $43.61 and $22.10 for CVI shares and CVRR units, respectively, one trading day prior to the announcement of the Exchange Offer, the Exchange Offer valued CVRR units at $27.63 per unit, or a 25 percent premium.

27.     In connection with the Exchange Offer, CVI filed an S-4 registration statement with the SEC to register 23,537,209 shares of CVI on May 29, 2018.  On June 14, 2018 CVI filed an amendment to its registration statement on SEC Form S-4/A.  Both registration statements reiterated that there were "***no current plans to exercise the call right at this time or upon the consummation of the exchange***."[2]  The SEC declared CVI's registration statement effective on June 15, 2018, and CVI filed a prospectus in connection with the Exchange Offer on June 18, 2018.  The prospectus also stated that there were "***no current plans to exercise the call right at this time or upon the consummation of the exchange***."

28.     The Exchange Offer expired after the close of trading on July 27, 2018.  On this date, CVRR units closed at a price of 23.70 per unit.  Following the expiration of the Exchange Offer, the General Partner and its affiliates owned 84.5 percent of the outstanding CVRR units, and were thus well within the threshold to exercise the Call Right.

---

[2]     Emphasis added throughout unless otherwise noted.

## FALSE AND MISLEADING MISSTATEMENTS AND OMISSIONS

29.     The Class Period begins on July 30, 2018, the trading day following the

expiration of the Exchange Offer.  On that date, CVRR issued a press release stating that

"21,625,106 common units of CVR Refining [had been] validly tendered and not properly

withdrawn in the Exchange Offer," and that a result thereof, that CVI and its affiliates now

owned "approximately 84.5% of CVR Refining's outstanding common units."

30.     On August 1, 2018 CVI filed a Schedule 13D/A with the SEC discussing the

completion of the Exchange Offer.   The Schedule 13D/A again stated that there were "***no***

***current plans to exercise the call right***."

31.     Regardless of Defendants' false assurances that there were no plans to exercise

the Call Right, the reduced public float or CVRR units following the Exchange Offer as well as

the overhang of the Call Right negatively impacted market sentiment and put artificial

downward pressure on CVRR's unit price.  Defendants bid their time during these initial

declines in CVRR units.  Indeed, this waiting game was advantageous to Defendants, as

pursuant to the Partnership Agreement, at least 90 days would need to pass from the expiration

of the Exchange Offer prior to announcement of their intent to exercise the Call Right—

otherwise the remaining CVRR unitholders would be entitled to Exchange Offer premiums.

Upon expiration of the 90-day period, however, Defendants could instead stage a forced buyout

of the remaining CVRR unitholders at the manipulated 20-day trading average.

32.     The pressures on CVRR units following the Exchange Offer were not unnoticed

by analysts.  For example, an August 1, 2018 analyst report from Macquarie Research stated

that the "combination [of reduced public float and the looming Call Right] could potentially

create higher volatility and decrease unit holder's ability to capture the long term underlying

asset value."  Additionally, a September 27, 2018 analyst report from Wolfe Research stated

that following the Exchange Offer, CVRR's public float was viewed "as a risk," because

"CVRR's free float was reduced from an already limited 30% to an even smaller 15%."  The

report from Wolfe Research also noted that the existence of the Call Right removed any

"consolidation premium" that might have been enjoyed by CVRR unitholders should

Defendants seek to acquire the remaining CVRR units.  These "risks," as noted by analysts,

therefore caused CVRR's unit price to steadily decline and remain depressed following the

expiration of the Exchange Offer.

33.     Notwithstanding the artificial downward pressure put on the price of CVRR units

through Defendants' scheme to acquire the Partnership at artificially deflated prices, the

Partnership's actual financial results were overwhelmingly positive.  After the close of trading

on October 24, 2018, CVRR released its third quarter 2018 financial results, which results were

up *substantially* from the year prior.  For example, CVRR announced net income of $174

million on net sales of $1,857 million for the third quarter of 2018, compared to net income of

$70 million on net sales of $1,386 million for the third quarter of 2017.  Adjusted EBITDA for

the 2018 third quarter was $221 million compared to adjusted EBITDA of $139 million for the

2017 third quarter.  For the first nine months of 2018, net income was $439 million on net sales

of $5,139 million, compared to  net  income  of $118  million on  net  sales of $4,148 million for

the comparable period a year earlier.  Adjusted EBITDA for the first nine months of 2018 was

$494 million, compared to adjusted EBITDA of $296 million for the first nine months of 2017.

34.     On this news, CVRR units enjoyed the temporary gain of $1.25 per unit or 7

percent, closing at $18.34 on October 25, 2018.  Any gains in the price of CVRR units,

however, were ephemeral due to the looming Call Right, and removed from the unit price in a

matter of trading days.  Indeed, an analyst at Barclays reported in its "First Glance" at the
Partnership's third quarter 2018 results that, "operationally, it was a strong quarter" with
"margin capture" that was "surprisingly strong."  Nonetheless, Barclays wrote that "existence of
the call option by the parent corporation . . . will likely mute the market response," as
"privatization risk still serves as an overhang to any potential upside even after strong third
quarter results."

35.     In addition to posting favorable third quarter 2018 financial results for CVRR,
Defendants again assured investors that there were no intentions to exercise the Call Right.
Specifically, on the October 25, 2018 conference call with analysts and investors to discuss
CVRR's "solid results," Defendant Lamp, CEO of CVI, stated in no unclear terms that despite
the fact CVRR units were "undervalued," there hadn't been, and were no current plans to,
exercise the Call Right: "*[T]here was no intent of taking out CVRR at anytime or even
contemplated at that time.  And I don't think anything is changed in that scenario. . . .  [N]o
intentions of any change in strategy at this point.*"  Lamp's assurances would soon prove
hollow.

36.     After waiting to ensure a sufficient period of time had passed since the expiration
of the Exchange Offer (in order to avoid paying a higher price for CVRR units under the Call
Right) Defendants executed their plans to defraud the remaining minority CVRR unitholders in
late November 2018.  In an about face from Defendants' previous statements, on November 29,
2018 the General Partner determined that, in light of current conditions, the General Partner
"should consider exercising [the] [C]all [R]ight."  Importantly, the General Partner further
stated: "*Neither the General Partner nor any of its affiliates have purchased common units of
the Issuer during the 90-day period preceding the filing of this Schedule 13D/A*."

37.    Upon announcement that the General Partner would "consider" exercising the Call Right, and that the Call Right would be set by the 20-day trading average from whatever time the General Partner decided to call the units, the already beleaguered CVRR unit price saw further declines.  CVRR units slipped from a price of $14.16 per unit on November 29, 2018, reaching Class Period lows of $9.21 per share on December 21, 2018.  Indeed, a December 20, 2018 report from *Bloomberg Intelligence* stated that CVI's "disclosure that it may exercise its call option on the outstanding shares was the most important trigger for [the Partnership]'s underperformance relative to its parent and the broader sector."  Therefore, according to Defendants' plan, they could wait until the CVRR unit price bottomed out in order to leverage the 20-day trading average to acquire the outstanding CVRR units at fire sale prices.

38.    The November 29, 2018 statement that "[n]either the General Partner nor any of its affiliates have purchased common units of the Issuer during the 90-day period preceding the filing of this Schedule 13D/A," however, was false and misleading.  In fact, an executive officer of the General Partner, CVI, and CVRR, Janice T. DeVelasco ("DeVelasco"), had purchased CVRR units through a dividend reinvestment plan on November 14, 2018, at $16.71 per unit.  DeVelasco reported the purchase on SEC Form 4 nearly *two months* afterwards on January 15, 2019, stating that the substantial delay was purportedly due to "administrative error."

39.    DeVelasco, as an officer of the General Partner, was an affiliate.  Therefore, pursuant to the Partnership Agreement, if at any point within 90 days from her purchase Defendants sought to exercise the Call Right, the purchase price for the outstanding CVRR units would have been at minimum $16.71.  Of course, this *minimum* price does not factor in that the CVRR unit price had already been substantially manipulated by Defendants in the aftermath of the Exchange Offer and the abrupt announcement they were "considering" exercising the Call

Right.  Defendants, unsurprisingly, never once during the Class Period acknowledged DeVelasco's purchase or corrected their November 29, 2018 statements.

40.     On January 17, 2019, CVI issued a press release announcing that pursuant to the Partnership Agreement, the General Partner had assigned the Call Right to CVI.  Further, the press release stated that CVI had determined to exercise the Call Right "for a cash purchase price of $10.50 per Common Unit."  The Call Price, which was purportedly determined by the Partnership Agreement, was based on the "***average of the daily closing prices per Common Unit on the New York Stock Exchange ("NYSE") for the 20 consecutive trading days ending on January 14, 2019***."  Following this announcement, the price of CVRR units remained artificially depressed at approximately $10.49 per unit.  Defendant's scheme completed on January 29, 2019, when CVI exercised the Call Right at the Call Price.

41.     DeVelasco's November 14, 2018 purchase of CVRR units at $16.71 per unit, however, was well-within the 90-day period preceding the date of the notice of CVI's intent to effect the buyout.  Therefore, by failing to disclose DeVelasco transaction in determining the exercise price, Defendants were able to fraudulently set the Call Price to $10.50 instead of $16.71, thereby driving CVRR's unit price to artificial lows.

42.     Notably, on January 29, 2019, another Form 4 was filed for DeVelasco to reflect the disposition of her outstanding CVRR units.  This Form 4, however, now stated that the securities were held on behalf of a living trust, of which she was co-trustee.  This, according to the Form 4, marked yet another alleged administrative error, as DeVelasco had "previously incorrectly reported [the CVRR units] as held directly by the reporting person."  The suspicious timing of this "correction," therefore indicates that Defendants were aware, or at least recklessly disregarded DeVelasco's November 14, 2018 transaction.

43.     Therefore, throughout the Class Period, Defendants purposely depressed the price of CVRR units, thereby harming unitholders who sold their units prior to the exercise of the Call Right.

## UNDISCLOSED ADVERSE FACTS

44.     At all relevant times, the market for CVRR common units was open, well-developed and efficient.  As a result of Defendants' false statements and manipulative conduct, CVRR common units traded at artificially deflated prices during the Class Period.  Plaintiff and other members of the Class sold the Partnership's common units relying upon the integrity of the market price of the Partnership's common units and market information relating to CVRR, and have been damaged thereby.

45.     During the Class Period, Defendants materially misled the investing public, thereby purposely deflating the price of CVRR's common units, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  These statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about CVRR's business, operations, and prospects as alleged herein.

46.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause, of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made, or caused to be made, a series of materially false and/or misleading statements about CVRR's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically negative assessment of the Partnership and its financial well-being and

prospects, thus causing the Partnership's common units to be undervalued and artificially deflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class selling the Partnership's common units at artificially deflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

47.     During the Class Period, as alleged herein, the Defendants acted with scienter in that the Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Partnership during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

48.     The Defendants permitted CVRR to release these false and misleading statements and failed to file the necessary corrective disclosures, which artificially deflated the value of the Partnership's common units.

49.     As set forth herein, the Defendants, by virtue of their receipt of information reflecting the true facts regarding CVRR, their control over, receipt, and/or modification of CVRR's allegedly materially misleading statements and omissions, and/or their positions with the Partnership that made them privy to confidential information concerning CVRR, participated in the fraudulent scheme alleged herein.

50.     The Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on those who sold CVRR common units  by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme deceived the investing public regarding CVRR's business, operations, and

16

management and the intrinsic value of CVRR common units and caused Plaintiff and members of the Class to sell CVRR common units at artificially deflated prices.

## LOSS CAUSATION/ECONOMIC LOSS

51.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially deflated the price of CVRR's common units and operated a fraud or deceit on Class members by failing to disclose and misrepresenting the facts detailed herein.  This course of conduct misled the Class members and caused them, in reliance on the misrepresentations and on the market price of CVRR's common units during the Class Period, to sell their common units at a depressed price.  As a result of their sale of CVRR common units during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

52.     To the extent that Defendants concealed or improperly failed to disclose material facts with regard to the Partnership, Plaintiff is entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972).

53.     Plaintiff is also entitled to rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     the Partnership's common units traded in an efficient market;

(d)     the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Partnership's common units; and

(e)     Plaintiff and other members of the Class transacted in CVRR common

17

units between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

54.     At all relevant times, the markets for CVRR common units were efficient for the following reasons, among others:

(a)     as a regulated issuer, CVRR filed periodic public reports with the SEC;

(b)     CVRR regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

(c)     CVRR was followed by several securities analysts employed by major brokerage firm(s) who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s) and that were publicly available and entered the public marketplace; and

(d)     CVRR common units were actively traded in an efficient market, namely the NYSE, under the ticker symbol "CVRR."

55.     As a result of the foregoing, the market for CVRR common units promptly digested current information regarding CVRR from all publicly available sources and reflected such information in CVRR's common unit price.  Under these circumstances, all those who purchased or otherwise acquired CVRR common units during the Class Period suffered similar injury through sales of CVRR's common units at artificially deflated prices, and the presumption of reliance applies.

## NO SAFE HARBOR

56.     The statutory safe harbor provided for forward-looking statements under certain

18

circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of CVRR who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

57.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all former owners of CVRR common units who sold common units, and were damaged thereby, during the period from July 30, 2018, through January 28, 2019, both dates inclusive (the "Class"). Excluded from the Class are: Defendants (as defined herein); any officers or directors of Defendants during the Class Period (the "Excluded D&Os"); members of Defendants' and the Excluded D&Os' immediate families; the subsidiaries and affiliates of the Partnership, including the Partnership's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); any entity in which Defendants or the Excluded D&Os have or had a controlling interest; and the legal representatives, heirs, successors or assigns of any excluded person or entity.

58.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether the Exchange Act was violated by Defendants;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

(e)     Whether the price of CVRR common units was artificially deflated; and

(f)     The extent of the damage sustained by Class members and the appropriate measure of damages.

59.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

60.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in securities class action litigation.  Plaintiff has no interests that conflict with those of the Class.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT  I

### For Violation of Section 10(b) of the Exchange Act
### and Rule 10b-5 Against All Defendants

62.     Plaintiff repeats and realleges each and every allegation contained in the

20

foregoing paragraphs as if fully set forth herein.

63. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

64. Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

        (a) Employed devices, schemes, and artifices to defraud;

        (b) Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

        (c) Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their transactions in CVRR common units during the Class Period.

65. Plaintiff and the Class have suffered damages in that, as a result of Defendants' wrongful conduct alleged herein, they sold CVRR common units at artificially deflated prices. Plaintiff and the Class would not have sold CVRR common units at the prices they did, if they had been aware that the market prices had been artificially and falsely deflated by Defendants' misleading statements.

66. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their sales of CVRR common units during the Class Period.

## COUNT II

### For Violation of Section 20(a) of the Exchange Act
### Against the Control Person Defendants

67.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

68.     The Control Person Defendants, as culpability participants, acted as controlling persons of CVRR within the meaning of Section 20(a) of the Exchange Act.  By virtue of their positions and their power to control public statements about CVRR, the Control Person Defendants had the power and ability to control the actions of CVRR and its employees.  By reason of such conduct, Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Awarding such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  April 6, 2020

Respectfully submitted,

**LABATON SUCHAROW LLP**

/s/ *Francis P. McConville*
Christopher J. Keller
Eric J. Belfi
Francis P. McConville
David J. Schwartz
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com
dschwartz@labaton.com

*Counsel for Plaintiff*

## CERTIFICATION

I, Andrew Kustas, am the owner of White Pine Investments ("White Pine"), and hereby certify as follows:

1.      In my capacity as the owner of White Pine, I am personally authorized to enter into and execute this certification on behalf of White Pine, the beneficial owner of the securities at issue in this litigation;

2.      I have reviewed a complaint prepared against CVR Refining LP ("CVRR") alleging violations of the federal securities laws and authorize the filing of this pleading;

3.      White Pine did not transact in the securities of CVRR at the direction of counsel or in order to participate in any private action under the federal securities laws;

4.      White Pine is willing to serve as a lead plaintiff and representative party in this matter, including providing testimony at deposition and trial, if necessary.  White Pine fully understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the Class;

5.      White Pine's transactions in CVRR securities are reflected in Exhibit A attached hereto;

6.      White Pine has not sought to serve as a lead plaintiff in any class action filed under the federal securities laws during the last three years;

7.      Beyond it's pro rata share of any recovery, White Pine will not accept payment for serving as a lead plaintiff and representative party on behalf of the Class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this _30_ day of March, 2020.

Andrew Kustas
Owner
Authorized Signatory for
*White Pines Investments*

**EXHIBIT A**

**TRANSACTIONS IN CVR REFINING LP**

| Transaction Type | Trade Date | Shares | Price Per Share | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 08/15/18 | 160.00 | $18.66 | ($2,986.25) |
| Purchase | 10/16/18 | 435.00 | $18.46 | ($8,028.48) |
| Purchase | 10/22/18 | 525.00 | $19.40 | ($10,186.54) |
| Sale | 01/09/19 | -6,120.00 | $11.09 | $67,870.80 |