UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WHITE PINE INVESTMENTS, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  v.<br><br>CVR REFINING, LP, CVR ENERGY, INC., CVR REFINING GP, LLC, CVR REFINING HOLDINGS, LLC, ICAHN ENTERPRISES, L.P., and DAVID L. LAMP,<br><br>        Defendants. | Case No. 1:20-cv-02863-AT |

MEMORANDUM OF LAW
IN SUPPORT OF MOTION OF GREGORY GERSCH FOR
<u>APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS .........................................................................................................2

ARGUMENT ..............................................................................................................................5

      A.      GERSCH SHOULD BE APPOINTED LEAD PLAINTIFF................................5

             1.      Gersch Is Willing to Serve as Class Representative ..................................6

             2.      Gersch Has the "Largest Financial Interest"..............................................6

             3.      Gersch Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure .................................................................7

             4.      Gersch Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses .............................................9

      B.      LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ........................................................................................................9

CONCLUSION .........................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
    141 F.R.D. 229 (S.D.N.Y. 1992) ...................................................................................6

*In re Comverse Technology, Inc. Securities Litigation*,
    No. 06-CV-1825 (E.D.N.Y.) ..........................................................................................8

*Dookeran v. Xunlei Ltd.*,
    No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) .............................6

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992) ..........................................................................................5

*Fischler v. AMSouth Bancorporation*,
    No. 96-1567-Civ-T-17A, 1997 WL 118429 (M.D. Fla. Feb. 6, 1997) .........................5

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) ...................................................................................6

*Gluck v. CellStar Corp.*,
    976 F. Supp. 542 (N.D. Tex. 1997) ...............................................................................5

*Greebel v. FTP Software*,
    939 F. Supp. 57 (D. Mass. 1996) ..................................................................................5

*Janbay v. Canadian Solar, Inc.*,
    272 F.R.D. 113 (S.D.N.Y. 2010) ...................................................................................6

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) ...................................................................................7

*In re Molson Coors Brewing Co. Sec. Litig.*,
    233 F.R.D. 147 (D. Del. 2005) ......................................................................................7

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d at 296 .......................................................................................................5

*In re Orion Sec. Litig.*,
    No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 7, 2008) ..........................5

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) .....................................................................................5

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008) ................................................................................... 7

**Statutes**

15 U.S.C. § 78u-4(a) ............................................................................................... ii, 3, 4, 7

Private Securities Litigation Reform Act of 1995 ................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

Movant Gregory Gersch ("Gersch") respectfully submits this Memorandum of Law in support of his motion pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an Order: (1) appointing Gersch as Lead Plaintiff on behalf of a class consisting of all former owners of CVR Refining, LP ("CVRR") common units who sold their units, and were damaged thereby, between July 30, 2018 and January 28, 2019, both dates inclusive (the "Class Period"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant who possesses the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Gersch, having sold 6,006 CVRR common units during the Class Period, believes that he has the largest financial interest in the relief sought in the above-captioned action ("Action"). Gersch further satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure as he is an adequate representative with claims typical of the other Class members. Accordingly, Gersch respectfully submits that he should be appointed Lead Plaintiff.

## STATEMENT OF FACTS

As alleged in the Complaint (Dkt. No. 1), this putative class action asserts securities fraud claims against CVRR, CVR Energy, Inc. ("CVI"), CVR Refining GP, LLC (the "General Partner"), CVR Refining Holdings, LLC ("CVR Holdings"), Icahn Enterprises, L.P., and David L. Lamp. CVRR, an independent downstream energy limited partnership, was formed by CVI. Since formation, CVRR's business and operations have been run by the General Partner pursuant to CVRR's partnership agreement (the "Partnership Agreement"). As of December 31, 2017, public security holders held approximately 34 percent of CVRR's outstanding units, and CVR Holdings held approximately 66 percent of CVRR's outstanding units.

According to the Partnership Agreement, if the General Partner and/or affiliates own more than 80 percent of CVRR's units, the General Partner could exercise and/or assign to its affiliates the right to acquire CVRR's remaining outstanding units (the "Call Right"). As set forth in the Partnership Agreement, the predetermined price per unit under the Call Right was the greater of: (i) the average closing price of the units during the 20 trading days predating three days before the notice of intent to effect the buyout; or (ii) the highest per-unit price paid by the General Partner or any of its affiliates for CVRR units during the 90-day period preceding the date the notice of intent to effect the buyout.

On May 29, 2018, CVI announced an exchange offer in which it would exchange CVI stock for most of CVRR's outstanding common units (the "Exchange Offer"). Under the terms of the Exchange Offer, CVI and affiliates, including the General Partner, would collectively own at minimum more than 80 percent, and at maximum 95 percent, of CVRR's units upon completion. In connection with the Exchange Offer, CVI repeatedly stated that it "ha[d] no current plans to exercise the call right at this time or upon the consummation of the exchange."

2

The Class Period begins on July 30, 2018, when CVRR issued a press release announcing that the Exchange Offer had expired after the close of trading on July 27, 2018. The press release further stated that following the expiration of the Exchange Offer, that the General Partner, CVI, and other affiliates owned 84.5 percent of the outstanding CVRR common units, a sufficient amount to exercise the Call Right. Shortly thereafter on August 1, 2018, Defendants reiterated that there were "no current plans to exercise the call right."

Throughout the Class Period, Defendants executed a fraudulent scheme to artificially depress the price of publicly traded CVRR units in order to acquire them for a substantial discount, thereby enriching themselves at the expense of public unit holders:

(1) *First*, following the Exchange Offer, reduced public float and the threat of the Call Right began depressing the price of CVRR units, more than offsetting favorable financial results.

(2) *Second*, as the price for CVRR units stagnated, and more than 90 days had passed since expiration of the Exchange Offer, Defendants announced that they were "considering" exercising the Call Right, further causing the units to decline.

(3) *Finally*, once the price of CVRR units had substantially declined, Defendants seized upon the Call Right, enjoying a purchase price based on the (manipulated) 20-day trading average of CVRR units.

After the close of trading on October 24, 2018, CVRR released its third quarter 2018 financial results, which results were up substantially from the year prior. What should have signaled meteoric gains for CVRR, however, fell flat. Instead, any gains in the unit price of CVRR all but evaporated in a handful of trading days. This negative market sentiment, all according to Defendants' plans, reflected the reduced public float of CVRR units following the Exchange Offer,

as well as the looming threat of the Call Right—despite assurances that there was "no intention" to exercise it.

After waiting to ensure a sufficient period of time had passed since the expiration of the Exchange Offer, the General Partner announced on November 29, 2018 it was "considering" exercising the Call Right. Importantly, the General Partner added that neither it, nor any of its affiliates, had purchased CVRR units in the 90-day period predating the announcement. Therefore, Defendants signaled to the market that if (when) they exercised the Call Right, the price would be based on the substantially depressed CVRR unit price. Following this disclosure, CVRR units slipped from a price of $14.16 per unit on November 29, 2018, reaching Class Period lows of $9.21 per share on December 21, 2018.

On January 17, 2019, CVRR issued a press release announcing the General Partner had assigned the Call Right to CVI, and that CVI had determined to exercise the Call Right. Further, the press release stated that CVI had determined to exercise the Call Right "for a cash purchase price of $10.50 per Common Unit" (the "Call Price"). The Call Price, which was purportedly determined by the Partnership Agreement, was based on the 20-day trading average of CVRR units ending on January 14, 2018. Following the announcement, the price of CVRR units remained artificially depressed at approximately $10.49 per unit. Defendant's scheme completed on January 29, 2019, when CVI exercised the Call Right at the Call Price.

To add a further layer to Defendants' fraud, an executive officer of the General Partner, CVI, and CVRR, and therefore an affiliate of the General Partner, had in fact purchased CVRR units on November 14, 2018, at $16.71 per unit—well-within 90 days of CVI's notice of intent to exercise the Call Right. This transaction, which was only disclosed on January 15, 2019, purportedly due to administrative error, was all but ignored by Defendants. Therefore, pursuant to

4

the Partnership Agreement, the Call Price should have been at minimum, $16.71. Of course, this minimum price did not factor in that the CVRR unit price had already been substantially manipulated by Defendants.

Therefore, throughout the Class Period, Defendants purposely depressed the price of CVRR units, thereby harming unitholders who sold their units prior to the exercise of the Call Right.

## ARGUMENT

### A. GERSCH SHOULD BE APPOINTED LEAD PLAINTIFF

Gersch should be appointed Lead Plaintiff because he has the largest financial interest in the Action and otherwise meets the requirements of Rule 23. Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of a lead plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

> (cc) otherwise satisfies the requirements of Rule 23 of the Federal
> Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Gersch satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1. Gersch Is Willing to Serve as Class Representative

On April 6, 2020, counsel for plaintiff in the Action caused a notice to be published pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "Notice"), which announced the pendency of this Action and advised investors in CVRR securities that they had until June 5, 2020—*i.e.*, 60 days—to file a motion to be appointed as Lead Plaintiff.  *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Ex. A.

Gersch has filed the instant motion pursuant to the Notice and has submitted a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary.  *See* Lieberman Decl., Ex. B.  Accordingly, Gersch satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2. Gersch Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of his knowledge, Gersch has the largest financial interest of any CVRR investor seeking to serve as Lead Plaintiff.  During the Class Period, Gersch sold 6,006 CVRR common units.  *See* Lieberman Decl., Ex. C.  To the extent that Gersch possesses the largest financial interest in the outcome of this litigation, he may be presumed to be the "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. Gersch Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23 (a).

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997); *Fischler v. AMSouth Bancorporation*, No. 96-1567-Civ-T-17A, 1997 WL 118429, at *2 (M.D. Fla. Feb. 6, 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296.

The typicality requirement of Fed. R. Civ. P. 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960

7

F.2d 285, 291 (2d Cir. 1992)). "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

The claims of Gersch are typical of those of the Class. Gersch alleges, as do all class members, that Defendants violated federal securities laws by making what they knew or should have known were false or misleading statements of material facts concerning the Company, or omitted to state material facts necessary to make the statements they did make not misleading. Gersch, as did all members of the Class, sold CVRR securities during the Class Period at prices artificially depressed by Defendants' misrepresentations or omissions and was damaged thereby. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

Gersch is an adequate representative for the Class. There is no antagonism between the interests of Gersch and those of the Class, and his losses demonstrate that he has a sufficient interest in the outcome of this litigation. Finally, Gersch has retained counsel highly experienced

8

in vigorously and efficiently prosecuting securities class actions such as this action and submits his choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

### 4. Gersch Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Gersch as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)   will not fairly and adequately protect the interests of the class; or
>
> (bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(II).

The ability and desire of Gersch to fairly and adequately represent the Class has been discussed above. Gersch is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class. Accordingly, Gersch should be appointed Lead Plaintiff for the Class.

### B.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'") (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008)); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Gersch has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume. *See* Lieberman Decl., Ex. D. Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010. *Id*. Most recently, Pomerantz announced as Lead Counsel on behalf of a class of Fiat investors that it reached a $110 million settlement with the company. *Id.* As a result of Pomerantz's extensive experience in securities litigation and class actions involving issues similar to those raised in the Action, Pomerantz has the skill and knowledge necessary to enable the effective and expeditious prosecution of the Action. Thus, the Court may be assured that by approving Gersch's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Gersch respectfully requests that the Court issue an Order: (1) appointing Gersch as Lead Plaintiff for the Class; and (2) approving Pomerantz as Lead Counsel.

Dated:  June 5, 2020

                        Respectfully submitted,

                        POMERANTZ LLP

                        */s/ Jeremy A. Lieberman*
                        Jeremy A. Lieberman
                        J. Alexander Hood II
                        600 Third Avenue, 20th Floor
                        New York, NY 10016

Telephone: (212) 661-1100
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Counsel for Lead Plaintiff Movant Gregory Gersch and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
peretz@bgandg.com

*Additional Counsel for Lead Plaintiff Movant Gregory Gersch*