# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| WHITE PINE INVESTMENTS, Individually and on Behalf of All Others Similarly Situated, | Case No.: 1:20-cv-02863-AT <br><br> <u>CLASS ACTION</u> |
| Plaintiff, |  |
| vs. |  |
| CVR REFINING, LP, CVR ENERGY, INC., CVR REFINING GP, LLC, CVR REFINING HOLDINGS, LLC, ICAHN ENTERPRISES, L.P., and DAVID L. LAMP |  |
| Defendants. |  |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
WHITE PINE INVESTMENTS FOR APPOINTMENT AS LEAD PLAINTIFF
<u>AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND ................................................................................................. 2

ARGUMENT .......................................................................................................................... 5

I.      WHITE PINE SHOULD BE APPOINTED LEAD PLAINTIFF ..................................... 5

         A.     The PSLRA Standard For Appointing Lead Plaintiff ............................................. 6

         B.     White Pine Is The "Most Adequate Plaintiff" ......................................................... 7

               1.     White Pine's Motion Is Timely ................................................................... 7

               2.     White Pine Has the Largest Financial Interest ............................................ 7

               3.     White Pine Satisfies Rule 23's Typicality and Adequacy Requirements ................................................................................................ 8

                      (i)     White Pine's Claims Are Typical ..................................................... 8

                      (ii)    White Pine Will Fairly and Adequately Protect the Interests of the Class ......................................................................................... 9

               4.     White Pine Is Precisely the Type of Lead Plaintiff Envisioned by the PSLRA ................................................................................................ 10

II.     WHITE PINE'S SELECTION OF COUNSEL MERITS APPROVAL ......................... 11

CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Basile v. Valeant Pharm. Int'l, Inc.*,
  No. SACV 14-2004 DOC(ANx), 2015 WL 13652714 (C.D. Cal. May 5, 2015) .................................................................................................................7, 8

*Bevinal v. Avon Prods., Inc.*,
  No. 19 Civ. 1420 (CM), 2019 WL 2497739 (S.D.N.Y. June 3, 2019) ......................8

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ...................................................................................11

*Faig v. Bioscrip, Inc.*,
  No. 13 CIV. 06922 AJN, 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013) .................9

*Kemp v. Universal Am. Fin. Corp.*,
  No. 05 Civ. 9883 (JFK), 2006 WL 1190691 (S.D.N.Y. May 1, 2006) ....................7

*In re KIT Digital, Inc. Sec. Litig.*,
  293 F.R.D. 441 (S.D.N.Y. 2013) ...........................................................................11

*Lipetz v. Wachovia Corp.*,
  No. 08 Civ. 6171 (RJS), 2008 WL 4615895 (S.D.N.Y. Oct. 10, 2008) .................10

*Oklahoma Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
  No. 16 Civ. 8260 (PAE), 2017 WL 775850 (S.D.N.Y. Feb. 28, 2017) ...............6, 11

*Peifa Xu v. Gridsum Holding Inc.*,
  No. 18 Civ. 3655 (ER), 2018 WL 4462363 (S.D.N.Y. Sept. 17, 2018) ................8, 9

*Randall v. Fifth St. Fin. Corp.*,
  No. 15-CV-7759(LANK), 2016 WL 462479 (S.D.N.Y. Feb. 1, 2016) ...................11

*Reitan v. China Mobile Games & Entm't Grp., Ltd. (China Mobile)*,
  68 F. Supp. 3d 390 (S.D.N.Y. 2014) ......................................................................11

*Rhode Island Laborers' Pension Fund v. FedEx Corp.*,
  No. 19-CV-5990 (RA), 2019 WL 5287997 (S.D.N.Y. Oct. 18, 2019) .....................7

*San Antonio Fire & Police Pension Fund v. Dole Food Co., Inc.*,
  177 F. Supp. 3d 838 (D. Del. 2016) .........................................................................7

*Sgalambo v. McKenzie*,
  268 F.R.D. 170 (S.D.N.Y. 2010) .............................................................................9

**Rules & Statutes**

Fed. R. Civ. P. 23 .................................................................................................................. *passim*

15 U.S.C. § 78u-4 *et seq.* ..................................................................................................... *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   No. 04-cv-8141 (S.D.N.Y.) ............................................................................................. 11, 12

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
   No. 08-md-1963 (S.D.N.Y.) ................................................................................................ 12

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
   No. 09-md-2027 (S.D.N.Y.) ................................................................................................ 12

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ........................ 10, 11

Plaintiff and proposed Lead Plaintiff White Pine Investments ("White Pine") respectfully submits this Memorandum of Law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of its motion for the entry of an Order: (i) appointing White Pine as Lead Plaintiff on behalf of all former owners of CVR Refining, LP ("CVRR" or the "Partnership") common units who sold their units, and were damaged thereby, during the period from July 30, 2018 through January 28, 2019, both dates inclusive (the "Class Period"); (ii) approving White Pine's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class (as defined herein); and (iii) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

White Pine—a sophisticated institutional investor—respectfully submits that it should be appointed Lead Plaintiff on behalf of all former owners of CVRR common UNITS who sold units, and were damaged thereby, during the Class Period (the "Class"). The Action is brought against CVRR, CVR Energy, Inc. ("CVI"), CVR Refining GP, LLC (the "General Partner"), CVR Refining Holdings, LLC ("CVR Holdings"), Icahn Enterprises, L.P. ("IEP"), and David L. Lamp ("Lamp") (together, "Defendants"). The Action alleges that during the Class Period, Defendants made false and misleading statements and omissions to artificially depress the value of CVRR units in order to avoid paying a fair price to unitholders in connection with the exercise of the Call Right (defined herein).

The PSLRA requires that the Court appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court must determine which person has the "largest financial interest" in the relief sought by the Class in the Action, and also whether such movant has made a *prima facie* showing that they are a typical and adequate class

representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

White Pine respectfully submits that it is the "most adequate plaintiff" under the PSLRA and should be appointed Lead Plaintiff. As set forth below, White Pine sold 6,120 CVRR common units during the Class Period—an interest believed to be greater than that of any other qualified movant.[1] Accordingly, White Pine has a substantial financial interest in directing this litigation and recovering losses attributable to Defendants' violations of federal securities laws. In addition to asserting the largest financial interest in this litigation, White Pine also meets the typicality and adequacy requirements of Rule 23 because its claims are typical of those of absent Class members, and because it will fairly and adequately represent the interests of the Class.

Finally, pursuant to the PSLRA, White Pine respectfully requests that the Court approve the selection of Labaton Sucharow as Lead Counsel for the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class"). Labaton Sucharow is a nationally recognized securities class action litigation firm that has recovered billions of dollars in damages for defrauded investors.

Accordingly, White Pine respectfully requests that the Court appoint it as Lead Plaintiff for the Class and approve its choice of Counsel.

**FACTUAL BACKGROUND**

CVRR, an independent downstream energy limited partnership, was formed by CVI. Since formation, CVRR's business and operations have been run by the General Partner pursuant

---

[1] A copy of the PSLRA-required Certification of White Pine ("Certification"), signed by Andrew Kustas as the owner of White Pine, is attached as Exhibit A to the Declaration of Francis P. McConville (the "McConville Decl."). In addition, a chart identifying White Pine's transactions in CVRR common units during the Class Period is attached as Exhibit B to the McConville Decl.

to CVRR's partnership agreement (the "Partnership Agreement"). As of December 31, 2017, public security holders held approximately 34 percent of CVRR's outstanding units, and CVR Holdings held approximately 66 percent of CVRR's outstanding units.

According to the Partnership Agreement, if the General Partner and/or affiliates own more than 80 percent of CVRR's units, the General Partner could exercise and/or assign to its affiliates the right to acquire CVRR's remaining outstanding units (the "Call Right"). As set forth in the Partnership Agreement, the predetermined price per unit under the Call Right was the greater of: (i) the average closing price of the units during the 20 trading days predating three days before the notice of intent to effect the buyout; or (ii) the highest per-unit price paid by the General Partner or any of its affiliates for CVRR units during the 90-day period preceding the date of the notice of intent to effect the buyout.

On May 29, 2018, CVI announced an exchange offer in which it would exchange CVI stock for most of CVRR's outstanding common units (the "Exchange Offer"). Under the terms of the Exchange Offer, CVI and affiliates, including the General Partner, would collectively own at minimum more than 80 percent, and at maximum 95 percent, of CVRR's units upon completion. In connection with the Exchange Offer, CVI repeatedly stated that it "ha[d] no current plans to exercise the call right at this time or upon the consummation of the exchange."

The Class Period begins on July 30, 2018, when CVRR issued a press release announcing that the Exchange Offer had expired after the close of trading on July 27, 2018. The press release further stated that following the expiration of the Exchange Offer, the General Partner, CVI, and other affiliates owned 84.5 percent of the outstanding CVRR common units, a sufficient amount to exercise the Call Right. Shortly thereafter on August 1, 2018, Defendants reiterated that there were "no current plans to exercise the call right."

Throughout the Class Period, the Action alleges that Defendants executed a fraudulent scheme to artificially depress the price of publicly traded CVRR units in order to acquire them for a substantial discount, thereby enriching themselves at the expense of public unit holders: (i) first, following the Exchange Offer, reduced public float and the threat of the Call Right began depressing the price of CVRR units, more than offsetting favorable financial results; (ii) then, as the price for CVRR units stagnated, and more than 90 days had passed since the expiration of the Exchange Offer, Defendants announced that they were "considering" exercising the Call Right, further causing the units to decline; and (iii) finally, once the price of CVRR units had substantially declined, Defendants seized upon the Call Right, enjoying a purchase price based on the (manipulated) 20-day trading average of CVRR units.

After the close of trading on October 24, 2018, CVRR released its third quarter 2018 financial results, which results were up substantially from the year prior.  What should have signaled meteoric gains for CVRR, however, fell flat.  Instead, any gains in the unit price of CVRR all but evaporated in a handful of trading days.  This negative market sentiment, all according to Defendants' plans, reflected the reduced public float of CVRR units following the Exchange Offer, as well as the looming threat of the Call Right—despite assurances that there was "no intention" to exercise it.

After waiting to ensure a sufficient period of time had passed since the expiration of the Exchange Offer,  the General Partner announced on November 29, 2018 that it was "considering" exercising the Call Right.  Importantly, the General Partner added that neither it, nor any of its affiliates, had purchased CVRR units in the 90-day period predating the announcement.  Therefore, Defendants signaled to the market that if (when) they exercised the Call Right, the price would be based on the substantially depressed CVRR unit price.  Following

this disclosure, CVRR units slipped from a price of $14.16 per unit on November 29, 2018, reaching Class Period lows of $9.21 per unit on December 21, 2018.

On January 17, 2019, CVRR issued a press release announcing the General Partner had assigned the Call Right to CVI, and that CVI had determined to exercise the Call Right. Further, the press release stated that CVI had determined to exercise the Call Right "for a cash purchase price of $10.50 per Common Unit" (the "Call Price"). The Call Price, which was purportedly determined by the Partnership Agreement, was based on the 20-day trading average of CVRR units ending on January 14, 2018. Following the announcement, the price of CVRR units remained artificially depressed at approximately $10.49 per unit. Defendant's scheme completed on January 29, 2019, when CVI exercised the Call Right at the Call Price.

To add a further layer to Defendants' alleged fraud, an executive officer of the General Partner, CVI, and CVRR, and therefore an affiliate of the General Partner, had in fact purchased CVRR units on November 14, 2018, at $16.71 per unit—well-within 90 days of CVI's notice of intent to exercise the Call Right. This transaction, which was only disclosed on January 15, 2019, purportedly due to administrative error, was all but ignored by Defendants. Therefore, pursuant to the Partnership Agreement, the Call Price should have been at minimum, $16.71. Of course, this minimum price did not factor in that the CVRR unit price had already been substantially manipulated by Defendants.

Therefore, throughout the Class Period, Defendants purposely depressed the price of CVRR units, thereby harming White Pine and the Class.

## ARGUMENT

**I.     WHITE PINE SHOULD BE APPOINTED LEAD PLAINTIFF**

White Pine respectfully submits that it should be appointed Lead Plaintiff because it filed the instant motion in a timely manner, believes it has the largest financial interest in this

litigation of any qualified movant, and satisfies the typicality and adequacy requirements of Rule 23.

### A.     The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA provides a straightforward procedure for selecting a lead plaintiff for "each private action arising under [the Securities Act or the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff). First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–
>
> (I)     of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as lead plaintiff and appoint the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person who: (i) filed a complaint or made a motion to serve as lead plaintiff; (ii) has the largest financial interest in the relief sought by the class; and (iii) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Oklahoma Firefighters Pension & Ret. Sys. v. Xerox Corp.*, No. 16 Civ. 8260 (PAE), 2017 WL 775850, at *3 (S.D.N.Y. Feb. 28, 2017). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of

the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Rhode Island Laborers' Pension Fund v. FedEx Corp.*, No. 19-CV-5990 (RA), 2019 WL 5287997, at *1 (S.D.N.Y. Oct. 18, 2019).

### B. White Pine Is The "Most Adequate Plaintiff"

#### 1. White Pine's Motion Is Timely

White Pine filed this motion to serve as Lead Plaintiff in a timely manner. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), Labaton Sucharow, counsel for White Pine, the plaintiff in this litigation, published notice on *Business Wire* on April 6, 2020, the day the complaint in the Action was filed. *See* McConville Decl., Ex. C. The notice, in accordance with the PSLRA, indicated that applications for Lead Plaintiff must be made no later than 60 days from the date on which the notice was published, *i.e.*, June 5, 2020. White Pine filed its motion seeking appointment as Lead Plaintiff within this deadline and thus has satisfied the procedural requirements of the PSLRA.

#### 2. White Pine Has the Largest Financial Interest

The PSLRA instructs the court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Kemp v. Universal Am. Fin. Corp.*, No. 05 Civ. 9883 (JFK), 2006 WL 1190691, at *1-2 (S.D.N.Y. May 1, 2006). While the PSLRA provides no definitive guidance on how to calculate financial interest, courts look to total shares sold when the Class is defined as "a 'seller' class, not a traditional purchasers class." *San Antonio Fire & Police Pension Fund v. Dole Food Co., Inc.*, 177 F. Supp. 3d 838, 840 (D. Del. 2016) (appointing lead plaintiff movant who "sold . . . more shares than any other proposed lead plaintiff"); *see also Basile v. Valeant Pharm. Int'l, Inc.*, No. SACV 14-2004

7

DOC(ANx), 2015 WL 13652714, at *1 (C.D. Cal. May 5, 2015) (using total shares sold to calculate financial interest in case brought on behalf of seller class).

At the time of this filing, White Pine believes that it has the largest financial interest among Class members who filed timely applications for appointment as Lead Plaintiff and, accordingly, is presumed to be the "most adequate plaintiff." During the Class Period, White Pine sold 6,120 CVRR common units—an interest believed to be greater than that of any other qualified movant. *See* McConville Decl., Ex. B. Accordingly, White Pine has the largest financial interest of any qualified movant seeking Lead Plaintiff status, and is the presumptive "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Bevinal v. Avon Prods., Inc.*, No. 19 Civ. 1420 (CM), 2019 WL 2497739, at *1 (S.D.N.Y. June 3, 2019) (finding the movant with the largest financial interest to be the presumptive "most adequate plaintiff").

### 3. White Pine Satisfies Rule 23's Typicality and Adequacy Requirements

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Avon Prods., Inc.*, 2019 WL 2497739, at *1. At the lead plaintiff selection stage all that is required to satisfy Rule 23 is a preliminary showing that the lead plaintiff's claims are typical and adequate. *See Peifa Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655 (ER), 2018 WL 4462363, at *4 (S.D.N.Y. Sept. 17, 2018) ("[A]t this stage of the litigation, a moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met."). (citation and internal quotation marks omitted).

#### (i) White Pine's Claims Are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims, and

8

plaintiff's claims are based on the same legal theory. *See Sgalambo v. McKenzie*, 268 F.R.D. 170, 173–74 (S.D.N.Y. 2010). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *See Gridsum Holding Inc.*, 2018 WL 4462363, at *4.

White Pine's claims are typical of the claims asserted by the proposed Class. Here, White Pine's claims and legal arguments required to prove Defendants' liability in this action are virtually identical to those of absent Class members. Moreover, White Pine and other Class members have been harmed by the same Defendants' actions. Specifically, White Pine, as did all members of the Class, sold CVRR common units at artificially deflated prices due to Defendants' fraudulent scheme, and was harmed thereby. Because White Pine's claims arise from the same course of events as do the claims of other class members, the typicality requirement is satisfied. *See id.*

### (ii) White Pine Will Fairly and Adequately Protect the Interests of the Class

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts in this District assess a movant's adequacy based on the following factors: "(1) class counsel is qualified, experienced, and general able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Faig v. Bioscrip, Inc.*, No. 13 Civ. 06922(AJN), 2013 WL 6705045, at *3 (S.D.N.Y. Dec. 19, 2013) (citations and internal quotation marks omitted).

White Pine will fairly and adequately represent the interests of the proposed Class. No antagonism exists between White Pine's interests and those of the absent Class members; rather, the interests of White Pine and Class members are squarely aligned. Moreover, because of

White Pine's financial interest in this Action, Class members can be assured that White Pine has the incentive to vigorously represent the Class' interests. *See Lipetz v. Wachovia Corp.*, No. 08 Civ. 6171 (RJS), 2008 WL 4615895, at *3 (S.D.N.Y. Oct. 10, 2008) (noting investor's "substantial financial stake in the litigation" suggests that it would "vigorously" prosecute claims on behalf of the class). In addition, White Pine has retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, *see infra* Section II, and timely submitted its choice to the Court for approval, in accordance with the PSLRA. *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and 15 U.S.C. §§ 78u-4(a)(3)(B)(v).

Finally, there is no proof that White Pine is "subject to unique defenses that render such plaintiff incapable of representing the class," because no such proof exists. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, White Pine satisfies the adequacy requirement.

### 4. White Pine Is Precisely the Type of Lead Plaintiff Envisioned by the PSLRA

In addition to satisfying the requirements of Rule 23, White Pine—a large, sophisticated institutional investor—is precisely the type of investor Congress sought, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. *See id.* at 34–35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34. To this end, many courts, including courts in this District, have recognized that the legislative

history reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions. *See, e.g.*, *Reitan v. China Mobile Games & Entm't Grp., Ltd. (China Mobile)*, 68 F. Supp. 3d 390, 396 (S.D.N.Y. 2014) (collecting cases and recognizing that "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs"); *In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 446 (S.D.N.Y. 2013) (noting the "statutory preference for institutional lead plaintiffs"); *Randall v. Fifth St. Fin. Corp.*, No. 15-cv-7759(LANK), 2016 WL 462479, at *3 (S.D.N.Y. Feb. 1, 2016) (noting "Congressional preference for institutional lead plaintiffs in private securities class actions"); *Xerox Corp.*, 2017 WL 775850, at *5 (same).

White Pine as a sophisticated institutional investor, is well-versed in the oversight of counsel. In this regard, White Pine has already negotiated a competitive retainer agreement with Labaton Sucharow, its proposed Lead Counsel. Accordingly, White Pine has the sophistication and resources necessary to effectively litigate this matter and supervise Class counsel.

**II.     WHITE PINE'S SELECTION OF COUNSEL MERITS APPROVAL**

The PSLRA vests authority in the Lead Plaintiff to select lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Consistent with Congressional intent, a court should not disturb the lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the plaintiff class." *See* H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734.

Here, White Pine has selected Labaton Sucharow to serve as Lead Counsel for the Class. Labaton Sucharow has excelled as lead counsel in numerous landmark securities class actions on behalf of defrauded investors. For example, Labaton Sucharow served as lead counsel in *In re*

*American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, and secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which the Firm served as co-lead counsel.  Labaton Sucharow also served as co-lead counsel in *In re Satyam Computer Services Ltd. Securities Litigation*, No. 09-md-2027 (S.D.N.Y.), through which it helped recover from the company and its auditors a total of $150.5 million for class members.  Labaton Sucharow presently serves as lead counsel in several significant investor class actions.  *See* Labaton Sucharow Firm Resume, McConville Decl., Ex. D.

Thus, the Court may be assured that, by granting White Pine's motion, the Class will receive the highest caliber of legal representation.

## CONCLUSION

For the foregoing reasons, White Pine respectfully requests that the Court grant its motion and enter an Order: (i) appointing White Pine as Lead Plaintiff; (ii) approving White Pine's selection of Labaton Sucharow as Lead Counsel for the Class; and (iii) granting such other and further relief as the Court may deem just and proper.

DATED:  June 5, 2020                                  Respectfully submitted,

                                                      */s/ Francis P. McConville*

                                                      **LABATON SUCHAROW LLP**
                                                      Christopher J. Keller
                                                      Eric J. Belfi
                                                      Francis P. McConville
                                                      David J. Schwartz
                                                      140 Broadway
                                                      New York, New York 10005
                                                      Telephone: (212) 907-0700
                                                      Facsimile:  (212) 818-0477

ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com
dschwartz@labaton.com

*Attorneys for Plaintiff and Proposed Lead Plaintiff White Pine Investments and Proposed Lead Counsel for the Class*